MOSES POTTER
vs.                    } September Term, 1848.
EDWARD M. KERR.

[INSOLVENT LAWS—FOREIGN CREDITORS.]

THE rights of foreign creditors are not affected by the discharge of an insolvent, under the laws of Maryland.

State insolvent laws, although constitutional in their action upon the rights of their own citizens, are unconstitutional when they affect the rights of citizens of other states.

A discharge under the insolvent laws of Maryland cannot affect the right of foreign creditors to obtain against the insolvent, in the Maryland courts, an absolute and unqualified judgment, and to place their execution upon any property of the insolvent debtor to be found undistributed in the hands of the trustee.

[The bill was filed in this cause on the 8th of September, 1846. It appears that about the 20th of January, 1845, Moses Potter, the complainant, and Edward M. Kerr, the defendant, commenced business in Baltimore ; and that the relations between them was arranged and established by an agreement, which amongst other things, stated that Kerr had agreed to employ Potter, "as a salesman and general clerk, in his store, No. — Baltimore street, in the city of Baltimore, and to allow him for the faithful performance of his services in that capacity, one-quarter of the net profits that may arise from the business, after deducting all expenses, and the interest on amount of the capital stock put in said business, at the rate of six per cent. per annum, and to pay the said Moses Potter from the concern, for his support, the sum of eighty-three dollars and thirty-three cents, per month, which said monthly payments are to be advanced out of the net profits coming to the said Moses Potter, and to be deducted from his one-quarter share of the net profits at the end of each year." The agreement contained also the following clause : "And it is hereby declared to be the meaning of the articles of agreement aforesaid, that thereby the said Moses Potter is not made a partner in trade of the said E. M. Kerr, but that the allowance of one-fourth of the net profits,

after deducting the expenses of the business," &c., "is as *compensation* for the services of the said Moses Potter in lieu of clerk hire, and, further, that the said E. M. Kerr, is to sign all bonds, notes, or other obligations for the payment of money, or the performance of any contracts or any agreements necessary to be entered into for the conducting of the said business," &c. The bill stated that Potter was held out to the world as a partner, and that the business was conducted in the name of E. M. Kerr & Co., and that although he had not been treated as such in the distribution of the funds, his being so represented to the world, made him liable for the debts of the firm ; which were very considerable, as were also its resources, in debts due, and merchandise on hand ; that Kerr, in his individual capacity, had incurred heavy responsibilities, and was applying the funds of the concern to meet them ; that attachments had been issued against the effects of the firm by his individual creditors ; and that he had refused to account with him or to pay him his share of the profits.    The bill prayed for the appointment of a receiver ; the application of the funds, firstly to the payment of the joint debts of the firm ; for a dissolution of the partnership ; an injunction to restrain the defendant from meddling with the funds, or interfering with the receiver ; and an account.    The answer denied that the complainant had ever been treated by the defendant as a partner, either publicly or privately ; and stated that the name of E. M. Kerr & Co., under which he had continued to trade, was the name of an old firm, of which he had been the active member, and was used by him as being well known to the world ; that his acts had not been such as to make the complainant liable for the debts of the concern ; and that the complainant had appropriated to his own use, moneys received by him on defendant's account, far exceeding what he was entitled to under the agreement.    An injunction was granted by the late Chancellor upon the filing of the bill, and the defendant on putting in his answer, moved for its dissolution, which motion was ordered to stand for hearing at December term, 1846.    The case was argued before the present Chancellor, who delivered his opinion on the 11th January, 1847,

in favor of a continuance of the injunction. A number of depositions, and written evidence, to be used at the hearing, had been filed under an agreement ; the effect of which, the Chancellor said, was to show that "the complainant occupied a position in the business, with the knowledge and consent of both parties, which made him, as to third persons, a partner in the concern." And also that the concern was in very embarrassed circumstances, if not actually insolvent. The question of partnership was minutely and elaborately considered by the Chancellor, who decided that a partnership did exist as to third persons, though not as between the parties themselves. The case was again argued at the same term, on the appointment of a receiver, and in his opinion, on that occasion, he entered into a further consideration of the same question, deciding as before, the main ground relied on, being the fact of the complainant having been allowed for his services, a share of the profits. By the order filed with this opinion, on the 1st of February, 1847, George M. Gill, was appointed receiver, who duly qualified as such. From this order, and from those granting and continuing the injunction, the defendant appealed. On the 27th of April, 1847, the receiver having reported sales of the property to a large amount, an order was passed directing him to notify creditors of the firm to file their claims, and the case was afterwards referred to the Auditor to make a statement of the claims filed, several of which were judgments recovered against E. M. Kerr, by citizens of the state of New York; and an account. The Auditor in his report, filed 12th of October, 1847, stated that, with a few exceptions, all the claims filed, appeared to have originated since the formation of the partnership ; that it would appear from these, that the defendant's course was to deal in his own name, and that there was nothing to show that any one of them was entitled to preference over the rest. His account was stated accordingly, but was excepted to, and overruled, as to this mode of treating the claims, by the Chancellor. The Court of Appeals, at June term, 1848, reversed the orders appealed from, and remanded the cause to this court, "for such further proceedings, as the nature of the

case, and the rights and equities of the parties may render necessary;" but no opinion was delivered, or statement made of the grounds upon which this decision was based.

After the case was decided in the Court of Appeals, John Glenn, as permanent trustee of Kerr, who had petitioned for the benefit of the insolvent laws, filed his petition in this court, to have the money, property, books and effects of the defendant, in the hands of the receiver, delivered over to him. The receiver was directed to show cause against this application, and an answer was filed by him for that purpose. By this it was represented that sundry attachments had been laid in his hands, issued upon judgments, some of which were rendered against Kerr, individually, and some against Kerr and Potter, jointly; that one of them was issued prior to the decree of the Court of Appeals; the residue subsequently thereto, and that all of them were still depending; the former in the Circuit Court of the United States for the district of Maryland; and the others in Baltimore County Court; and submitted whether the receiver under the circumstances, could with safety to himself deliver up the property.]

THE CHANCELLOR:

It is insisted on the part of the insolvent trustee of Kerr, that the orders granting and continuing the injunction, and appointing a receiver, being reversed, Kerr, if he had not petitioned, would be remitted to all his rights, and would be entitled to a restitution of the property; and that the trustee being clothed with all his rights, the possession must be restored to him.

It is to be presumed, however, if the Court of Appeals had considered it proper to dispose of the question of title in this summary way; that is, if they had thought, that in no possible phase which the cause might assume, the creditors of the mercantile house of E. M. Kerr and Company, or the joint credi tor of Kerr and Potter, could intervene in this cause for the protection of their rights, and ask the court to apply the assets to their payment in preference to the private creditors of Kerr, they would either have dismissed the bill, or remanded the

cause to this court with directions to dismiss it, after recalling the funds from the receiver. But this was not done, the direction being to proceed, as the nature of the cause, and the rights and equities of the parties, may require.

The parties to the record before the Court of Appeals, were Moses Potter vs. Edward M. Kerr, and it may be that the court decided the cause upon the ground, that upon that record they could only regard the rights of those parties *inter se ;* and there being as between them no partnership, there was no foundation for the orders appealed from.

It must have been manifest to the Court of Appeals, however, that there were creditors of the house to a large amount, for that appeared by the pleadings; and it must have been equally obvious to that tribunal, that Kerr was insolvent, and that claiming the sole ownership of the property, he insisted upon his right to apply the effects to the payment of debts due from him, not connected with or growing out of the business of the house; and this may have been the reason why the bill was not dismissed, or the record remanded to this court, with directions to dismiss it, after the property should be taken out of the hands of the receiver.

The Court of Appeals may have considered, that the creditors not being parties to the cause before that court, the orders passed by this court, which were designed for their protection, could not be supported.; but that seeing there were creditors to a large amount, who might become parties at a subsequent stage of the cause, and whose rights would be jeoparded by restoring the property to Kerr, it was deemed right, instead of pronouncing a final judgment, to send the case back to this court for such further proceedings as the interests of the creditors might require, and to give them an opportunity of coming in and being heard.

This view of the subject borrows strength from the disposition which the appellate court made of the subject of costs. They award the appellant the costs incurred by him upon the appeal, and in the Court of Appeals; but leave undecided the question of costs in this court, which it is fair to infer, would

not have been done if they had meant to decide the whole controversy, and to restore to the appellant without restriction and at once, the subject in dispute.

Supposing it possible, nay, probable, that if the creditors of E. M. Kerr & Co., had been parties to the record before the Court of Appeals, a different decision would have been made, it follows, that as these creditors are now here upon the invitation of the court itself, it would be proper, at least for the present, to abstain from passing any order which may seriously endanger their interests. In a very short time, it is believed, the Court of Appeals will deliver their opinion, when the doubts which now surround this subject will be removed.

The order which the court will pass, whilst it will secure the property for those who may be entitled to it, will expose no parties to danger.

The propriety of the order which the Chancellor, under the circumstances thinks it right to pass, would seem to be vindicated by another consideration.

Attachments, as we have seen, have been laid in the hands of the receiver, one of them prior to, and the other since, his authority was revoked, and it would, perhaps, be presumptuous in this court to pronounce absolutely upon the validity of these proceedings. Should they be sustained by the courts in which they are pending, and this court, by its order should take the property from the receiver, and hand it over to the trustee of Kerr, the former might be involved in heavy loss. It is surely the duty of this court to protect its officer from loss when acting in the discharge of his duty, and especially when it can be done without exposing the rights or interests of others to the slightest risk.

It has been urged in the argument, that the right of the petitioner, as the permanent trustee in insolvency of Kerr, to the possession and administration of this fund, is superior to any which he himself could have claimed, if he had not applied for the benefit of the insolvent laws; and the case of Alexander vs. Ghiselin is relied upon in support of this position.

That case might have a controlling effect, if it did not appear,

as it does in this case, that a number of these judgment creditors are non-residents of the state.

The rights of these creditors are, unquestionably, not affected by the discharge of Kerr under the insolvent laws of Maryland. Independently of the case of *Cook* vs. *Moffatt et al.*, 5 *Howard Rep.*, 295, the last decision, it is believed, of the Supreme Court upon the subject, the Court of Appeals of this state, in the case of *Frey* vs. *Kirk*, 4 *Gill & Johns.*, 509, have put the question at rest. In remarking upon the case of *Ogden* vs. *Saunders*, 12 *Wheaton*, 213, they say, that the ultimate opinion of Mr. Justice Johnson, which established the law upon the subject, settled among others, the principle, "that such laws, (speaking of the state insolvent laws,) although constitutional in their action upon the rights of their own citizens, are unconstitutional, when they affect the rights of citizens of other states."

It is said, however, that though the state insolvent laws are unconstitutional, so far as they operate upon the *rights* of the citizens of other states, that yet the decisions of the Supreme Court of the United States, concede to the states, the power to pass laws, affecting and regulating the *remedies* which may be resorted to, for the enforcement of those rights. And it is urged, that our state insolvent system, which, as expounded by the Court of Appeals in the case of Alexander and Ghiselin, places the whole property of the insolvent in the hands of the trustee, to be administered by him, is a mere regulation of the remedy, and so far constitutional and binding upon the citizens of other states. And that, consequently, the property must be delivered to the trustee, who will distribute it among the creditors according to their respective rights.

This view of the subject is in direct conflict with what was said by the learned judge, who delivered the opinion of the Court of Appeals in the case of *Larribee* vs. *Talbot*, decided at December term, 1847, which was, that "it was now settled by the adjudications of the Supreme Court, that a discharge obtained under the insolvent laws of Maryland, could not affect the right of foreign creditors to obtain against the insolvent in the Maryland courts an absolute and unqualified judgment, and

24*

to place their execution upon any property of the insolvent debtor to be found undistributed in the hands of the trustee."

Whether this position is to be regarded as an *obiter dictum* or not, it is of course entitled to great consideration ; and seeing that the case was decided at the same term as that of Alexander and Ghiselin, with which it is supposed to be inconsistent, we must presume that the enlightened tribunal by which both causes were decided, were clearly of opinion, that nothing decided, or even said by way of argument, in the one, was in conflict with the other.

The conflict, certainly, is not apparent to me, nor do I see the dangers which it is said the domestic creditors will be exposed to, if property in the hands of the trustee, upon which they have acquired liens, prior to its transfer to him is afterwards levied upon in his hands at suit of the foreign creditor of the insolvent. Because, although the foreign creditor may lay his execution on property in the hands of the trustee, such levy must be subject to the prior liens of the domestic creditor, and any sale which may be made under such execution would pass the property subject to the same lien, precisely as if the party had not petitioned, and the levy and sale had been made whilst the property remained in the hands of the debtor himself.

My opinion, therefore, is, that as this case now stands, I cannot grant the application of the trustee of Kerr, and must dismiss his petition, but inasmuch as the anticipated opinion of the Court of Appeals, may present his right in a different aspect, it will be dismissed without prejudice to his rights hereafter to renew the application as he may be advised. The money and funds, however, now in the hands of the receiver, will be ordered to be brought into court to be deposited to the credit of this cause.